UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

RONALD NUNNERY )
)
    Plaintiff, )
)
  vs. ) Case No. 1:03-CV-00113-ERW
)
LARRY PLUNKETT, SR. )
Sherriff of Wayne County )
)
    Defendant. )

**MEMORANDUM AND ORDER**

This matter comes before the Court upon Defendant's Motion for Summary Judgment [doc. #34]. Plaintiff has filed this suit seeking damages pursuant to 42 U.S.C. § 1983 for violations of his right to medical care guaranteed under the Eighth Amendment of the United States Constitution. Defendant seeks summary judgment in his favor on all claims in Plaintiff's amended complaint. For the reasons stated below, Defendant's motion is granted.

**I.    BACKGROUND**[1]

---

[1] The Court deems admitted all the facts as outlined by Defendant. Local Rule 4.01(E) states, "All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party." The rule further requires the party opposing a motion for summary judgment to "set forth with specific references to portions of the record, where available, upon which the opposing party relies" when attempting to show that a genuine issue of material fact exists. Local Rule 4.01(E).
"A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Barge v. Anheuser-Busch, Inc.*, 87 F.3d 256, 260 (8th Cir.1996) (quoting *White v. McDonnell Douglas Corp.*, 904 F.2d 456, 458 (8th Cir.1990)). *See Deichmann v. Boeing Co.*, 36 F. Supp. 2d 1166, 1168 (E.D. Mo.,1999) (adopting the defendant's statement of uncontroverted facts in its entirety because the plaintiff failed to specifically identify any facts that were in dispute). Plaintiff is deemed to have admitted all facts which were not specifically controverted. *Deichmann v. Boeing Co.*, 36 F. Supp. 2d 1166, 1168 (E.D.Mo. 1999); *Nofles v. State Farm Mut. Auto. Ins. Co.*, 101 F. Supp. 2d 805, 808 (E.D.Mo.

1

Plaintiff is a prisoner in the Missouri Department of Corrections ["MDOC"] (Ex. 1). Plaintiff was incarcerated in the Wayne County Jail on December 6, 2001 (Ex. 1). Prior to his incarceration in the Wayne County Jail, Plaintiff had a history of medical problems with his ears. On November 20, 1986, Plaintiff failed a hearing test (Ex. 4). On April 18, 1987, Plaintiff complained of problems with his left ear, noting that it had "ben [sic] that way for almost 2 weeks" (Ex. 4). An examination of Plaintiff's ear revealed slight swelling and redness of the left ear canal (Ex. 4.). On April 22, 1987, Plaintiff complained about his left ear (Ex. 4). His examination showed that his left ear canal was slightly reddened. (Ex. 4). On May 26, and again on May 28, 1987, Plaintiff filed a medical services request complaining of pain in his right ear (Ex. 4). An examination on May 27, 1987, noted that Plaintiff's right ear canal was red (Ex. 4). On September 3, 1988, Plaintiff complained about his right ear (Ex. 4). On December 19, 1988, Plaintiff's exam showed Plaintiff suffered from hearing loss in his left ear (Ex. 4). On January 17, 1989, Plaintiff complained of an ear ache in his right ear (Ex. 4). An examination showed that his right ear was red (Ex. 4). On December 19, 1991, Plaintiff complained that he had been experiencing an ear ache "for over a week now" (Ex. 4). Ten days later, on December 29, 1991, Plaintiff again complained of soreness and hearing congestion in his ear (Ex. 4).

During his incarceration in the Wayne County Jail, Plaintiff was taken to the Kneibert Clinic on December 19, 2001, after his first request for medical attention (Ex. 2-59:22, 3). Although the Clinic noted that Plaintiff suffered from "decreased hearing," on December 19, 2001, he was treated for "trouble breathing with a dry cough" and there is no indication that he complained of, or suffered

---

2000); *Ruby v. Springfield R-12 Pub. Sch. Dist.*, 76 F.3d 909, 911 n.6 (8th Cir.1996). While Plaintiff has made broad allegations, he has failed to identify any specific fact contained in Defendant's statement of uncontroverted facts for to which he contends there is a dispute.

from, any problems with his ears (Ex. 3). In addition, the Clinic's notes indicate that Plaintiff's "head, eyes, ear, nose, and throat" ("HEENT") were "unremarkable" on December 19, 2001 (Ex. 3).

Plaintiff was transferred to the Dent County Jail on February 27, 2002 (Ex. 1). On March 13, 2002, Plaintiff was taken to the Salem Memorial District Hospital (Ex. 5). His records indicate that his symptoms at this time included trouble breathing, coughing, sinus pain, congestion, vomiting, and diarrhea (Ex. 5). There is no mention of any problems with his ears at this time, and the records indicate a normal ENT [ear, nose, and throat] inspection (Ex. 5). The first indication of any problem with Plaintiff's ears after his incarceration in the Wayne County Jail occurred on September 13, 2002, almost seven months after Plaintiff had been transferred from Wayne County to the Dent County Jail (Ex. 5). Plaintiff's medical records from his September 13, 2002 visit to Salem County Memorial District Hospital indicate that he had been experiencing an ear ache for approximately a month (Ex. 5). Plaintiff's medical records from this visit also indicate a "[right] ear problem before over last 20 years intermittent" (Ex. 5). Plaintiff was treated on September 13, 2002 for fluid and or blood behind the tympanic membrane of his right ear (Ex. 5). The Court notes that Plaintiff has not had a hearing test performed recently to determine the amount of his alleged hearing loss as compared to levels of his hearing loss measured in tests prior to Defendant's alleged refusal to provide medical care (Ex. 2, 50:3-8). Plaintiff has obtained no medical opinion supporting his contention that any hearing loss he may be experiencing was due to the alleged delays in receiving medical treatment while Plaintiff was incarcerated in the Wayne County Jail (Ex. 2, 52:16 to 53:19).

Although Defendant was Sheriff during the time that Plaintiff was incarcerated in the Wayne County Jail, Defendant does not know Plaintiff, nor has he ever met Plaintiff (Ex. 6, ¶ 3). Plaintiff has never seen Defendant, and does not know Defendant's identity (Ex. 2, 37:16-19). In his capacity as Sheriff, Defendant enacted a written set of policies, compiled in a document entitled the "Wayne

3

County Jail Manual," which were official policies enacted by and enforced by Defendant and the employees at Wayne County Jail (Ex. 6, ¶ 4). No deviation from the jail policies is permitted (Ex. 6, ¶ 4).

Other than in his role in enacting and enforcing the policies as set forth in the Jail Manual, Defendant took no part in making any decisions regarding the medical treatment of Plaintiff, and was never notified of any serious illness suffered by him (Ex. 6, ¶ 6). Defendant is not aware that Plaintiff ever suffered from any serious illness during the time in which he was incarcerated in the Wayne County Jail (Ex. 6, ¶ 7). Defendant is not aware of Plaintiff requesting medical treatment at any time after his visit to the Kneibert Clinic in December 2001 (Ex. 6, ¶ 8). Defendant never refused Plaintiff medical treatment at any time and is not aware that any other jail employee refused Plaintiff medical treatment (Ex. 6, ¶ 9).

The policy for inmate medical treatment, as set forth in the Jail Manual, states that Wayne County will provide medical and dental services to inmates (Ex. 6, ¶ 10). It also provides that emergency services are to be provided to inmates on an as-needed basis (Ex. 6, ¶11). The policy outlines a detailed set of instructions for the provision of medical services to inmates (Ex. 6, ¶ 12) and procedures for the dispensing of medications to the inmates (Ex. 6, ¶ 13). The policy affirmatively states that no inmate will be refused medical care as a form of discipline or harassment (Ex. 6, ¶ 14). Defendant is not aware of any violations of the policies as set forth in the Jail Manual, and would take all appropriate steps to discipline any offending parties to insure that strict compliance is maintained if he were to become aware of any violations (Ex. 6, ¶ 15).

Plaintiff filed his original complaint on October 15, 2003 naming as the Defendant, "Bobby Burch," whom Plaintiff believed was the Sheriff of Wayne County, Missouri [doc. #4]. On May 24, 2004, Plaintiff filed his amended complaint substituting "John Doe, the Wayne County Sheriff," as

the Defendant after allegedly discovering that Bobby Burch had "falsely presented his self [sic] to plaintiff as the Sheriff" [doc. #16]. Plaintiff has sued Defendant in his individual capacity only [doc. #16]. The amended complaint alleges that Defendant deliberately failed to provide instructions that Plaintiff should be given his medication and refused to allow follow-up medical care [doc. #16]. On July 9, 2004, Sheriff Larry Plunkett, Sr., filed an answer denying any personal involvement in Plaintiff's alleged inability to receive proper care [doc. #18]. On December 17, 2004, Defendant filed this motion for summary judgment [doc #34].

## II. SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if the evidence before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Crumley v. City of St. Paul*, 324 F.3d 1003, 1006 (8th Cir. 2003). The United States Supreme Court has noted that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

"By its terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for judgment; the requirement is that there be no *genuine* issue of *material* fact." *Hufsmith v. Weaver*, 817 F.2d 455, 460 n.7 (8thCir. 1987) (quoting *Anderson*, 477 U.S. at 247-48 (emphasis added by Supreme Court)). Material facts are those "that might affect the outcome of the suit under governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48). Summary judgment will be denied due to a genuine issue of material fact if "the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving

5

party." *Crumley*, 324 F.3d at 1006. Further, if the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. *Crumley*, 324 F.3d at 1006 (citing *Lynn v. Deaconess Med. Ctr.-W. Campus*, 160 F.3d 484, 487 (8th Cir. 1998)). The burden then shifts to the non-moving party who must set forth specific evidence showing that there is a genuine dispute as to material issues. *Anderson*, 477 U.S. at 250. To meet its burden, the non-moving party may not rest on the pleadings alone and must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.

In analyzing summary judgment motions, the court must view the evidence in the light most favorable to the non-moving party. *Crumley*, 324 F.3d at 1008. The non-moving party is given the benefit of any inferences that can logically be drawn from those facts. *Matsushita*, 475 U.S. at 587. The court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.*, 210 F.3d 845, 847 (8th Cir. 2000). The court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." *Id.*

## III. ANALYSIS

Plaintiff brings his suit pursuant to 42 U.S.C. § 1983[2] claiming that Defendant violated his Eighth Amendment constitutional right to be free from cruel and unusual punishment. In *Estelle v. Gamble*, the Supreme Court ruled that the Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . . against which we must evaluate penal measures." 429 U.S. 97, 102-03 (1976) (internal citations and quotations omitted); *Wickham v. Dowd*, 914 F.2d 1111, 1119 (8th Cir. 1990). For this reason "[t]he government is obligated to provide medical care for those whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." *Robinson v. Hager*, 292 F.3d 560, 563 (8th Cir. 2002) (quoting *Estelle*, 429 U.S. at 103). It is a violation of the Eighth Amendment to deny medical care for serious medical needs when the denial results in pain and suffering that serves no penological purpose. *Estelle*, 429 U.S. at 103. A serious medical need exists when a person "has been diagnosed by a physician as requiring treatment or [the need] is so obvious that even a lay person would easily recognize the need for a doctor's attention." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) (quoting *Johnson v. Busby*, 953 F.2d 349, 351 (8th Cir. 1991)).

Specifically, in order to find an Eighth Amendment violation, the inmate has the burden of proving both a subjective and objective component. *Choate v. Lockhart*, 7 F.3d 1370, 1373 (8th Cir. 1993). First, the prison official must deprive the inmate of a right that is objectively "sufficiently serious" to rise to the level of a constitutional violation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The "act or omission must result in the denial of the minimal civilized measure of life's necessities." *Id.* (internal quotations omitted). Second, the "prison official must have a sufficiently

---

[2] 42 U.S.C. § 1983 states: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]"

culpable state of mind." *Id.* (internal quotations omitted). "[T]hat [subjective] state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.* Deliberate indifference exists when the prison official "knew of, yet disregarded, an excessive risk to his health." *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (quoting *Logan v. Clarke*, 119 F.3d 647, 649 (8th Cir. 1997)). Therefore, for Plaintiff to succeed in his claim that Defendant was deliberately indifferent, he "must evidence (1) he suffered from a serious medical condition, (2) defendant[] knew of the condition, and (3) defendant[] deliberately disregarded the condition." *Kitchen v. Miller*, 343 F. Supp. 2d 820, 823 (E.D. Mo. 2004). Defendant's motion for summary judgment will be granted if Plaintiff fails to provide support for each essential element. *Celotex*, 477 U.S. at 322-23. Here, this Court finds that Plaintiff has failed to present evidence establishing a genuine issue of material fact for any of the three elements of his *prime facie* case.

### A. Plaintiff's Serious Medical Condition

Plaintiff fails to provide evidence that he had a serious medical condition while incarcerated at Wayne County Jail. On December 19, 2001, less than two weeks after becoming an inmate in the Wayne County Jail, Plaintiff was taken to the Kneibert Clinic after making his first request for medical attention. His medical records indicate that his symptoms at this time included trouble breathing, coughing, sinus pain, congestion, vomiting, and diarrhea. There is no mention of any problems with his ears at this time, and the records indicate a normal ENT [ear, nose, and throat] inspection.

On March 13, 2002, shortly after he left the Wayne County Jail, Plaintiff was taken to Salem Memorial Hospital where he complained of a cough he had been experiencing during the previous two weeks while incarcerated in Dent County. Plaintiff made no complaint concerning his ears, and his ear inspection was normal. The first record of any ear problems after Plaintiff's incarceration at Wayne County Jail occurs in September of 2002, seven months after leaving custody of Wayne County. (Ex. 5.) The length of time between the end of his incarceration in Wayne County, and his complaints of further problems with his ears, is further evidence that Plaintiff was not suffering from

8

a serious medical condition when he was in Wayne County. Plaintiff provides no evidence that he experienced problems with his ears during his incarceration at Wayne County Jail.

In addition, Plaintiff failed to provide evidence that he suffered harm as a result of his alleged delay in obtaining treatment. "An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995) (adopting this standard); *See Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997) (summary judgment properly entered for the defendants where the plaintiff failed to submit verifying medical evidence that delay in providing sunglasses further damaged his eye); *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997) (no harm shown from delay in treatment); *Sherrer v. Stephens*, 50 F.3d 496, 497 (8th Cir. 1994) (did not produce evidence that the delay in receiving medical care adversely affected the prisoner's prognosis); *Keeper*, 130 F.3d at 1314 (must look at the effect of the delay in treatment).

Plaintiff alleges a loss of hearing as a result of his delay in treatment, but provides no evidence in support of this assertion. On December 19, 2001, less than two weeks after becoming an inmate in the Wayne County Jail, Plaintiff was taken to the Kneibert Clinic. The records of this visit indicate that Plaintiff already suffered from hearing loss at that time. Plaintiff has never had a subsequent hearing test performed to determine if additional hearing loss has occurred. In addition, Plaintiff has obtained no medical opinion supporting his contention that any hearing loss he may be experiencing was due to the alleged delays in receiving medical treatment while Plaintiff was incarcerated in the Wayne County Jail.

Plaintiff's sole support for his contention that he suffered additional injury as a result of the alleged delay in treating his medical needs is his statement that he was "made aware of the fact that the hearing in both my ears had been adversely affected by the long term ear infection that started while I was housed in the Wayne County jail between December 6, 2001 and February 27, 2002."

(Aff. of Ronald Nunnery, ¶ 14.) This hearsay statement of an unidentified individual is of no help to Plaintiff because "[i]nadmissible hearsay evidence alone may not defeat a summary judgment motion." *Firemen's Fund Ins. Co. v. Thien*, 8 F.3d 1307, 1310 (8th Cir. 1993) (citing *Financial Timing Publications v. Compugraphic Corp.*, 893 F.2d 936, 942, n.6 (8th Cir. 1990)).

Because Plaintiff failed to present evidence that creates a genuine issue of material fact as to whether he had a serious medical condition while incarcerated at Wayne County Jail or whether he incurred any detriment from the alleged delays in receiving treatment, this Court will grant Defendant's motion for summary judgment.

### B. Defendant's Knowledge of the Condition

To succeed in his claim, Plaintiff "must show that the prison officials intentionally ignored 'a substantial risk of serious harm to an inmate'[.]" *Williams v. Kelso*, 201 F.3d 1060, 1065 (8th Cir. 2000) (quoting *Farmer*, 511 U.S. at 828). The state of mind required is "more blameworthy than negligence," and as a result, the mere "careless diagnosis or treatment of known serious medical needs of prisoners is insufficient." *Williams*, 201 F.3d at 1065. (quotations omitted); *see Farmer*, 511 U.S. at 838 ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."); *Davis v. Hall*, 992 F.2d 151, 153 (8th Cir. 1993) ("Mere negligence is not sufficient to support a cause of action under § 1983.").

Plaintiff's contention that Defendant "should have known" of his serious medical condition is irrelevant to the present inquiry because anything short of actual knowledge is insufficient to establish liability. There is no evidence to support the contention that Defendant had actual knowledge of Plaintiff's alleged unmet medical needs. There is, however, ample evidence to the contrary. Plaintiff admits that he has never seen Defendant, and does not even know who he is. Rather, all of Plaintiff's interactions were with jail personnel other than Defendant. It is undisputed

that Defendant did not know Plaintiff, did not directly participate in the decisions regarding the medical treatment of Plaintiff, and was never notified of any serious illness suffered by Plaintiff. The undisputed facts reveal that Defendant was never aware that Plaintiff suffered from any serious illness during the time in which he was incarcerated in the Wayne County Jail, or that Defendant requested medical treatment at any time after his visit to the Kneibert Clinic in December, 2001.

Because Plaintiff failed to present evidence that creates a genuine issue of material fact as to whether Defendant had actual knowledge of Plaintiff's serious medical condition, this Court will grant Defendant's motion for summary judgment.

### C. Defendant's Deliberate Indifference

Because Plaintiff is suing Defendant solely in his personal capacity, Plaintiff must establish that Defendant personally participated in the constitutional deprivations, as it is "well settled that *respondeat superior* cannot be the basis of liability in a § 1983 action." *Givens v. Jones*, 900 F.2d 1229, 1233 (8th Cir. 1990) (citing *Bolin v. Black*, 875 F.2d 1343, 1347 (8th Cir. 1989)). In addition, the Eighth Circuit has recognized that "a warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement" in an alleged constitutional deprivation. *Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir. 1987) (citing *Glick v. Sargent*, 696 F.2d 413, 414 (8th Cir. 1983)).

Again, there is simply no evidence to support the contention that Defendant was personally involved with Plaintiff's alleged constitutional deprivations. While the amended complaint contains allegations that Defendant "deliberately failed to instruct the jailer to give [Plaintiff his] medication," and that Defendant "refused" to provide Plaintiff with follow-up medical care, these statements are not supported by any admissible evidence. On the contrary, Plaintiff admits that he has never seen Defendant, does not even know who he is, and had no interaction with him. It is also undisputed that

Defendant did not know Plaintiff, did not directly participate in the decisions regarding the medical treatment of Plaintiff, and was never aware of any unmet medical needs.

Absent direct personal participation in the alleged constitutional deprivations, Defendant may only be liable if Plaintiff can prove that Defendant has made policy decisions resulting in the alleged unconstitutional conditions. *Ouzts*, 825 F.2d at 1277-78. In this regard, Plaintiff bears the burden of alleging and proving that Defendant (1) received notice of a pattern of unconstitutional acts committed by subordinates; (2) demonstrated deliberate indifference to or tacit authorization of the offensive acts; (3) failed to take sufficient remedial action; and (4) that such failure proximately caused injury to Plaintiff. *Larson v. Miller*, 76 F.3d 1446, 1453 (8th Cir. 1996).

The undisputed facts show that there was no policy or custom to deny medical attention to Plaintiff or any other inmate. In fact, the undisputed facts indicate that it was the policy of the Wayne County Jail to provide emergency services to inmates on an as-needed basis and that it was impermissible to withhold medical care from an inmate as a form of discipline or harassment. It is also undisputed that Defendant was unaware of any policy violations and would have taken disciplinary action had he become aware of any violations.

Because Plaintiff failed to present evidence that creates a genuine issue of material fact as to whether Defendant acted with deliberate indifference to Plaintiff's serious medical condition, this Court will grant Defendant's motion for summary judgment.

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [doc. # 34] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Complaint is **DISMISSED** with **PREJUDICE**.

An appropriate order of dismissal will accompany this Order.

Dated this 20th day of July, 2005.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE